## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

|  |  |
|---|---|
| WILLIAM SPRINGSTEEN, IV, | Case No.: 3:26-cv-01865 |
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND** |
| | **FOR JURY TRIAL** |
| BANK OF AMERICA, N.A.; and BLOCK, INC. f/k/a SQUARE INC. d/b/a CASH APP, | |
| Defendants. | |

William Springsteen, IV, ("Plaintiff" or "Mr. Springsteen") brings this action on an individual basis, against Bank of America, N.A. ("Bank of America" or "BANA") and Block, Inc. f/k/a Square Inc. d/b/a Cash App ("Cash App") for its violations of the Electronic Funds Transfer Act ("EFTA") 15 U.S.C. § 1693, *et. seq.*, and states as follows:

### INTRODUCTION

1.    This is an action under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., arising from unauthorized electronic fund transfers from Plaintiff's Bank of America and Cash App accounts.

2.    Plaintiff provided a coworker, Seth Bryan Powell ("Powell"), with the screen lock PIN to Plaintiff's secondary cellphone for one limited purpose: to allow

1

Powell to retrieve the phone from a hotel room and return it to Plaintiff.

3.    Plaintiff did not authorize Powell to access Plaintiff's Cash App or Bank of America accounts, alter account settings, add payment instruments, sell investments, initiate electronic fund transfers, or receive any money from Plaintiff.

4.    Powell exceeded the limited permission Plaintiff gave, accessed Plaintiff's Cash App account, caused funds to be moved from Plaintiff's linked Bank of America account into Cash App, caused investment proceeds to become available in Cash App, and initiated unauthorized electronic fund transfers out of Plaintiff's Cash App account to a Bancorp Bank account that Plaintiff did not own or authorize.

5.    Plaintiff promptly notified Cash App while the unauthorized activity was ongoing and later notified Bank of America. Defendants nevertheless failed to conduct reasonable investigations, failed to properly credit Plaintiff's accounts, and improperly imposed liability on Plaintiff for unauthorized electronic fund transfers from which Plaintiff received no benefit.

6.    Plaintiff brings this action to recover actual damages, statutory damages, treble damages where applicable, costs, and attorneys' fees under the EFTA.

**PARTIES**

7.    William Springsteen, IV ("Plaintiff" or "Mr. Springsteen") is a natural person residing in Middleburg, FL and is a "consumer" as that term is defined in 15

U.S.C. § 1693a(6).

8.     Plaintiff is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

9.     At all relevant times, Plaintiff had an asset account in his name with Defendants (hereinafter, Plaintiff's "BANA Account" and "Cash App Account", respectively).

10.     At all relevant times, Plaintiff maintained a Bank of America deposit account in his name and a Cash App account in his name.

11.     Plaintiff's Bank of America and Cash App accounts were established and used primarily for personal, family, or household purposes.

12.     At all relevant times, Plaintiff's BANA and Cash App accounts constituted "accounts" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1).

13.     Defendant Bank of America, N.A. ("BANA") is a national bank with its headquarters in Charlotte, North Carolina and is authorized to conduct business in the State of Florida, including within this District.

14.     Defendant Block, Inc. (f/k/a, Square, Inc.) (d/b/a Cash App) ("Cash App") is incorporated in Delaware and is an American multinational technology conglomerate that operates through two reportable segments (in addition to other subdivisions/subsidiaries): Square and Cash App.  Defendant offers a service called

Cash App that allows consumers to send and receive money through its Cash App website and mobile app (the "Cash App Mobile App" or "Defendant's App"). While Cash App allows users to send and receive money at no cost, once a consumer becomes a Cash App user they must pay for additional services. For example, Cash App charges a 3% fee for transactions sent from credit cards and charges a .5% - 1.75% fee when users immediately transfer funds from their Cash App account to their bank accounts.  Cash App also charges ATM withdrawal fees and paper money deposit fees.   Cash App earned $10.6 billion in revenue in 2022. Defendant is authorized to conduct business within the State of Florida, including this judicial district.

15.     At all relevant times, Defendants BANA and Cash App were "financial institutions" as that term is defined by 15 U.S.C. § 1693a(9).

16.     At all relevant times, Defendants BANA and Cash App were "persons" as defined by Regulation E in 12 C.F.R. 1005.2(j).

## JURISDICTION AND VENUE

17.     This action arises out of Defendants' violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et. seq*.

18.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m, which allows claims under the Electronic Funds Transfer Act to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's receipt of notices, disputes to Defendants, and the financial injury suffered by Plaintiff.  Venue is also proper because Defendants conduct business in this District and are subject to personal jurisdiction here.

## FACTS

### A.     Summary of the Electronic Fund Transfer Act ("EFTA")

20.     In 1978, Congress passed the Electronic Fund Transfer Act (EFTA) (15 U.S.C. § 1693 *et. seq.*) to protect individual consumers from fraudulent, or unauthorized electronic fund transfers from their bank accounts.

21.     The stated purpose of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et. seq.*, ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).  EFTA's "primary objective…is the provision of individual consumer rights." *Id*.  Moreover, the language of the EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability.  *Id*., at 1693d-1.

22.     The EFTA is implemented through Regulation E, 12 CFR 1005.

23.     Regulation E defines an "Account" for purposes of the act to include a

5

"[c]hecking…account held by a financial institution…established primarily for personal, family, or household purposes." 12 CFR 1005.2(b)(3).

24.    An "electronic fund transfer" ("EFT") includes "any transfer of funds initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account."  15 U.S.C. § 1693a(7); 12 CFR 1005.3(b)(1).

25.    An "unauthorized electronic fund transfer" is an EFT from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 15 U.S.C. § 1693a(12); 12 C.F.R. § 1005.2(m).

26.    The EFTA and Regulation E limit a consumer's liability for unauthorized electronic fund transfers when the consumer provides timely notice to the financial institution. 15 U.S.C. § 1693g; 12 C.F.R. § 1005.6.

27.    A financial institution that fails to apply this limit of liability properly violates the EFTA.

28.    A financial institution violates the EFTA when it fails to timely investigate an alleged error, fails to conduct a reasonable and good-faith investigation, fails to correct an error, or fails to report the results of its investigation within three business days after completing its investigation.

29.    In this investigation, the financial institution bears the burden of

proving that the alleged Unauthorized EFT was, in fact, authorized.

30.     The failure by a financial institution (or any person) to comply with any provision of the EFTA makes the institution liable for:

    (a)     Any actual damage sustained by the consumer of the failure;

    (b)     In an individual action, damages of up to $1,000; and,

    (c)     Costs and attorney's fees.

15 U.S.C. § 1693m.

31.     Additionally, 15 U.S.C. § 1693f(e) provides that the consumer's damages shall be trebled "in any action under 1693m…if the Court finds that":

    (a)     The financial institution did not provisionally recredit a consumer's account within ten days, *and* the financial institution (1) did not make a good faith investigation of the alleged error[1], or (2) did not have a reasonable basis for believing that the consumer's account was not in error; or

    (b)     The financial institution knowingly and willfully concluded that the consumer's account was not in error when such a conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation.

---

[1] "Errors" includes an unauthorized transfer. 12 CFR 1005.11.

32.    The financial institution must also provide notice of the results of its investigation within 3 business days of completing it.  12 CFR 1005.11.

33.    A financial institution that fails to apply the limitations on liability properly to an unauthorized transfer reported within sixty days is liable for recrediting the amount of the transfer as well as actual damages, additional damages of up to $1,000.00, costs and attorney's fees.

34.    Additionally, a financial institution may be liable for treble damages when it fails to provisionally recredit a consumer's account and fails to make a good-faith investigation, lacks a reasonable basis for concluding that the consumer's account was not in error, or knowingly and willfully concludes that the consumer's account was not in error when such a conclusion could not reasonably have been drawn from the available evidence.

35.    Claims under the EFTA and Regulation E are additional to other remedies that may be available to a consumer.

**B.    Money Has Been Stolen from Plaintiff's BANA & Cash App Accounts**

36.    On January 14, 2026, Plaintiff accidentally left a secondary cellphone in a hotel room in Missoula, Montana.

37.    Plaintiff's co-worker, Seth Bryan Powell ("Powell"), offered to retrieve and mail the phone to Plaintiff.

38.    Powell was able to gain access to Plaintiff's hotel room with the

assistance of the hotel staff.

39. Powell told Plaintiff that he needed the phone's screen lock pin to prove to hotel staff and their employer that the phone belonged to Plaintiff.

40. Powell represented that the screen lock PIN was needed only to verify ownership of the device and facilitate return of the device to Plaintiff. Plaintiff provided the PIN strictly for the purpose of establishing that it was his phone and having the phone returned to him. Powell's later use of the phone to access Plaintiff's Cash App account, alter account settings, and initiate transfers exceeded the limited permission Plaintiff gave and was without actual authority.

41. Plaintiff did not provide Powell with any Cash App password, Cash App PIN, Bank of America password, banking credential, debit card, account number, routing number, or other means of access for the purpose of accessing Plaintiff's financial accounts or initiating electronic fund transfers.

42. Plaintiff's limited disclosure of the phone screen lock PIN did not include permission, consent, or actual authority for Powell to open Cash App, access Plaintiff's Bank of America account through Cash App, add payment instruments, change account settings, sell investments, transfer funds, or receive any money from Plaintiff.

43. Soon after, with Plaintiff's screen lock pin in hand, Powell began misusing Plaintiff's phone without Plaintiff's permission, consent, or authority.

9

44. Plaintiff's email account was also accessible on the unlocked phone, giving Powell the ability to view account-related communications or verification communications sent to that device or email account.

45. Further, Powell gained access to Plaintiff's Cash App account and made changes including, but not limited to, adding a Bancorp Bank account or debit card as an external payment instrument or transfer destination.

46. Upon information and belief, the Bancorp Bank account or debit card Powell added did not belong to Plaintiff and was owned, controlled, or used for the benefit of Powell or another person acting with him.

47. Powell then initiated a series of unauthorized transfers, including the following:

> (a) Two transfers from Plaintiff's linked Bank of America account totaling $265.51 to Plaintiff's Cash App account;
>
> (b) Powell caused securities held through Plaintiff's Cash App Investing account/functionality to be sold, causing approximately $6,447.91 in proceeds to become available in Plaintiff's Cash App balance; and
>
> (c) Powell then initiated several unauthorized electronic fund transfers from Plaintiff's Cash App balance, inclusive of the sold investments and the Bank of America transferred funds, out of

10

Plaintiff's Cash App account, causing approximately $6,738.42 to be transferred to the Bancorp Bank Account.

C.    **Plaintiff Disputes the Unauthorized Fund Transfers with Defendants**

48.    Plaintiff received real-time alerts early the next day on the primary phone still in his possession, specifically when the stock market opened and Powell started selling off Plaintiff's stocks held in Plaintiff's Cash App account on the secondary phone he left behind in Montana.

49.    Immediately upon notice, Plaintiff texted Powell to stop and then called Cash App within minutes to stop and dispute the unauthorized transfers.

50.    While on the phone with Cash App, Plaintiff received alerts requesting authorization to sell the stock.

51.    Plaintiff denied each authorization request, but Powell reinitiated the activity while Plaintiff was actively on the phone with Cash App reporting that Powell had Plaintiff's device and was attempting unauthorized transactions. Cash App therefore had notice of the unauthorized activity while it was ongoing, before at least some of the disputed electronic fund transfers were completed or reinitiated.

52.    Plaintiff reported the incident to Cash App the same day and filed a police report on January 15, 2026.

53.    Plaintiff also disputed the transfers with Defendant Bank of America in a local branch. Initially, Defendant Bank of America issued a provisional credit, but

11

later reversed the credit and concluded the disputed transfers were authorized.

54. Plaintiff received no benefit from any of the disputed electronic fund transfers.

55. The disputed transfers were initiated by Powell, not by Plaintiff, without Plaintiff's actual authority, and for the benefit of Powell or an account not owned or controlled by Plaintiff.

56. Defendant Cash App failed to provide any provisional credit.

57. Defendant Cash App closed and reopened an investigation of Plaintiff's disputes multiple times.

58. Ultimately, Defendant Cash App denied Plaintiff's disputes.

59. Defendant Cash App failed to provide a clear explanation as to its reasons for denying Plaintiff's disputes.

60. Plaintiff reported Powell and the theft to their employer.

61. Powell was ultimately terminated for unrelated theft.

62. Plaintiff's phone was later recovered by the employer under unclear circumstances and after Powell was terminated for unrelated theft.

63. None of Plaintiff's stolen funds have been recovered to date and each of the Defendants have ignored Plaintiff's meritorious disputes.

64. Specifically, Plaintiff has notified the Defendants that:

(a) Plaintiff never authorized the sale of stock from Plaintiff's Cash

12

App;

(b)   Plaintiff never authorized the electronic funds transfers from Plaintiff's BANA and Cash App accounts to Powell;

(c)   Plaintiff never provided Powell with permission, consent, or authority to electronically transfer funds from Plaintiff's BOA and Cash App Accounts.

65.   Notwithstanding Plaintiff's timely disputes, Defendants failed to permanently credit Plaintiff for the unauthorized electronic fund transfers outlined above.

66.   Bank of America initially provided a provisional credit but later reversed that credit and imposed liability on Plaintiff after concluding that the disputed Bank of America transfers were authorized.

67.   Cash App failed to provide Plaintiff with any provisional credit for the disputed Cash App transfers.

68.   Cash App further failed to provide a clear explanation for its denial and failed to provide documentation sufficient to support its conclusion.

69.   Defendants failed to conduct reasonable and good-faith investigations of Plaintiff's disputes.

70.   Defendants did not have a reasonable basis to conclude that the disputed electronic fund transfers were authorized by Plaintiff.

13

71.　Defendants unreasonably treated Plaintiff's limited disclosure of a phone screen lock PIN as authorization for Powell to access Plaintiff's financial accounts, alter account settings, add a payment instrument or transfer destination, and initiate electronic fund transfers.

72.　Defendants knowingly and willfully concluded that Plaintiff's accounts were not in error when such a conclusion could not reasonably have been drawn from the evidence available to them at the time of their investigations.

73.　Presently, Plaintiff remains without the $6,738.42 in funds that have been stolen from him.

74.　Defendants have imposed liability on Plaintiff for the entirety of the disputed transactions of $6,738.42 in funds that were fraudulently transferred by Powell.

75.　Plaintiff is neither legally responsible nor obligated to pay the $6,738.42 electronically transferred into Powell's account.

76.　At all times pertinent hereto, Defendants were acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

77.　At all times pertinent hereto, the conduct of Defendants, as well as that of its respective agents, servants, and/or employees, was intentional, willful,

14

reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

78.     Defendants' violations were willful because Defendants had actual notice of Plaintiff's disputes, possessed or had access to information showing that Powell lacked actual authority to initiate the disputed transfers, and nevertheless imposed liability on Plaintiff without a reasonable basis.

79.     As a direct and proximate result of the foregoing, Plaintiff suffered out of pocket damages of at least $6,738.42 from his BANA and Cash App accounts, a sum of money that, for Plaintiff and his family, is material.

80.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his depository funds; out of pocket losses; the expenditure of time and money disputing and trying to alert the Defendants to an unauthorized electronic fund transfer; the expenditure of labor and effort disputing and trying to have his funds returned; and emotional distress including the mental and emotional pain, anguish, fear, and worry of continued unauthorized electronic fund transfers.

/ /

15

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. §§ 1693, *et. seq.* (EFTA)
**Violation of the Electronic Fund Transfer Act and Regulation E for Failure to Comply with Error Resolution Procedures**

81.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

82.     Defendants are financial institutions subject to the requirements of the EFTA.

83.     Plaintiff's BANA and Cash App accounts at issue were established primarily for personal, family, or household purposes.  12 CFR 1005.2(b)(1).

84.     Plaintiff notified Defendants in January 2026 of the errors in Plaintiff's BANA and Cash App accounts in the form of unauthorized electronic funds transfers from the aforementioned accounts.

85.     The aforementioned electronic funds transfers were unauthorized electronic fund transfers as defined by 15 U.S.C. § 1693a(12); and 12 C.F.R. 1005.2(m).

86.     Defendants were required to initiate good faith investigations upon notice.

87.     Additionally, because the alleged errors were unauthorized EFTs, Defendants bore (and bear) the affirmative burden of proof to establish that the EFTs were authorized under 15 U.S.C. § 1693g(b).  See also, 83 Federal Register 6364,

16

6382 (Feb. 12, 2018).[2]

88.     Besides bearing the burden of proof for the investigation, Defendants were required to:

(a)     Investigate promptly and determine whether an error occurred within the time required by 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11, or timely provisionally recredit Plaintiff's account if extending the investigation beyond the initial investigation period;

(b)     Conduct a reasonable investigation;

(c)     Support any finding by a reasonable basis for believing the consumer's account was not in error;

(d)     Report to the consumer the results of the investigation within three business days of completing it.  12 CFR 1005.11.

(e)     Provide documentary evidence supporting its position if timely

---

[2] Absent the burden of proof, the obligation to act in good faith, and to back any determination by a reasonable basis in fact, any financial institution could simply conduct a cursory or conclusory "investigation," deny the claim, and avoid any loss to itself.

requested by Plaintiff after notice of the investigation results.

89.    Defendants violated the EFTA by failing to timely and reasonably investigate Plaintiff's disputes, failing to correct the errors, failing to provide adequate explanations for their determinations, and/or failing to provide supporting documentation when required.

90.    Defendants' actions were knowing and willful and in bad faith.

91.    Defendants' conduct was in violation of 15 U.S.C. § 1693f(a).

92.    Under 15 U.S.C. § 1693f(c), if a financial institution is unable to complete its investigation within the initial investigation period, it may extend the investigation only if it provisionally recredits the consumer's account in the amount alleged to be in error, subject to the requirements of the statute and Regulation E. Cash App did not provisionally recredit Plaintiff's account for the disputed transfers. To the extent Cash App failed to complete its investigation within the initial investigation period, Cash App violated the EFTA by failing to timely provisionally recredit Plaintiff's account. Additionally, Plaintiff is entitled to treble damages under 15 U.S.C. § 1693f(e) because Cash App and/or Defendants did not conduct a good-faith investigation, lacked a reasonable basis for concluding Plaintiff's account was not in error, and/or knowingly and willfully concluded that Plaintiff's account was not in error when such a conclusion could not reasonably have been drawn from the

18

evidence available at the time.

93.    Defendants violated 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d) by failing to adequately explain their determinations, failing to provide a reasonable basis for concluding that no error occurred, and/or failing to provide documentation supporting their determinations when required.

94.    As a direct and proximate result of the foregoing, Defendants are liable for Plaintiff's actual damages, statutory damages, costs, attorneys' fees, and, where applicable, treble damages pursuant to 15 U.S.C. § 1693f(e).

95.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his depository funds; the expenditure of time and money disputing and trying to alert the Defendants to unauthorized electronic fund transfers; the expenditure of labor and effort disputing and trying to have his funds returned; and emotional distress including the mental and emotional pain, anguish, fear, and worry of continued unauthorized electronic fund transfers.

96.    As a result of each and every violation of the EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorney's fees and costs

19

pursuant to 15 U.S.C. § 1693m(a)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendants negligently and/or willfully violated the EFTA;

ii.   Awarding Plaintiff actual, statutory, and treble damages where applicable, reasonable attorney's fees, and costs as provided by the EFTA;

iii.  Awarding such other and further relief, in law or equity, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


Dated: July 21, 2026,              */s/ Catherine Tillman*
                                   Catherine Tillman, Esq., FL #0057663
                                   **CONSUMER JUSTICE LAW FIRM**
                                   8095 North 85th Way
                                   Scottsdale, Arizona 85258
                                   T: (941) 263-7310
                                   F: (480) 613-7733
                                   E: ctillman@consumerjustice.com

                                   *Attorneys for Plaintiff*
                                   *William Springsteen, IV*

20